BLAKE J. RUSSUM (SBN 258031)
HAYK GHALUMYAN (SBN 314686)
ROPERS MAJESKI PC
535 Middlefield Road, Suite 245
Menlo Park, CA  94025
Telephone:  650.364.8200
Facsimile:  650.780.1701
Email:      blake.russum@ropers.com
            hayk.ghalumyan@ropers.com

Attorneys for Defendant
American Fire and Casualty Company

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARMEL VALLEY CENTRE DRIVE, LLC,<br><br>            Plaintiff,<br><br>    v.<br><br>AMERICAN FIRE AND CASUALTY COMPANY; and DOES 1 through 10, inclusive,<br><br>            Defendants. | Case No. 3:26-cv-01175-W-MSB<br><br>Honorable Thomas J. Whelan<br><br>**DEFENDANT AMERICAN FIRE AND CASUALTY COMPANY'S:**<br><br>**(1) NOTICE OF MOTION AND MOTION TO DISMISS; AND**<br><br>**(2) MEMORANDUM OF POINTS AND AUTHORITIES.**<br><br>[Fed. R. Civ. Proc. 12(b)(6)]<br><br>Date:      May 11, 2026<br>Crtrm:    Edward J. Schwartz United States Courthouse, 221 West Broadway, Courtroom: 3C (3rd Floor), San Diego, CA 92101<br><br>**NO ORAL ARGUMENT PER LOCAL RULE UNLESS FURTHER ORDERED BY THE COURT.** |

ROPERS MAJESKI
A Professional Corporation
Menlo Park

4897-5315-0874.4

DEFENDANT AMERICAN FIRE
AND CASUALTY COMPANY'S
MOTION TO DISMISS

**TO PLAINTIFF AND ITS ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that, on May 11, 2026, in Courtroom 3C of the Edward J. Schwartz United States Courthouse, located at 221 West Broadway, 3rd Floor, San Diego, CA 92101, Defendant American Fire and Casualty Company ("Defendant" or "American Fire") will, and hereby does, move this Court to dismiss Plaintiff Carmel Valley Centre Drive, LLC's ("Plaintiff" or "CVCD") Complaint.

This motion is made following the conference of counsel that took place telephonically on March 26, 2026, and pursuant to email correspondence between counsel on March 30, 2026. (Declaration of Hayk Ghalumyan ["Ghalumyan Declaration"] at ¶¶ 4-5.)  The pre-filing conference between American Fire's and CVCD's counsel was unsuccessful in resolving the issues addressed in this Motion. *Id.*

This Motion is based on this Notice of Motion, the accompanying Memorandum of Points and Authorities, the Ghalumyan Declaration, the papers, records and documentary materials on file or deemed to be on file in this action, those other matters of which this Court may take judicial notice, the oral arguments of counsel made at the hearing, and upon such other evidence and materials as this Court deems necessary.

Dated: April 3, 2026                               ROPERS MAJESKI PC


By: */s/ Hayk Ghalumyan*
BLAKE J. RUSSUM
HAYK GHALUMYAN
Attorneys for Defendant
American Fire and Casualty
Company

ROPERS MAJESKI
A Professional Corporation
Menlo Park

4897-5315-0874.4

- 1 -

DEFENDANT AMERICAN FIRE
AND CASUALTY COMPANY'S
MOTION TO DISMISS

ROPERS
MAJESKI

A Professional Corporation
Menlo Park

# TABLE OF CONTENTS

I.   INTRODUCTION ...................................................................................................5

II.  Factual Background ...........................................................................................6

   A. The Allegations in CVCD's Complaint Against American Fire .....................6

   B. The Policies .....................................................................................................8

   C. The Allegations against CVCD in the Underlying Action .............................9

   D. The Conclusion of the Underlying Action ....................................................11

III. LEGAL ARGUMENT .......................................................................................11

   A. Legal Standard...............................................................................................11

   B. Incorporation by Reference ..........................................................................12

   C. There Can Be No Duty to Defend an Action That Is No Longer Active ......12

   D. Alternatively, Coverage Would *Still* Be Unavailable Even If CVCD Could Establish it Was an Insured and Tendered Defense Prior to the Adjudication of the Underlying Action .........................................................15

   E. The Claim for the Implied Covenant of Good Faith and Fair Dealing Must Fail Because CVCD Cannot Allege That American Fire's Denial of Coverage Was Unreasonable ......................................................................17

IV.  CONCLUSION ..................................................................................................22

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Adams v. Johnson,*
355 F.3d 1179 (9th Cir. 2004)................................................................................11

*Aerojet-General Corp. v. Transp. Indem. Co.,*
17 Cal. 4th 38 (1997).............................................................................................14

*Amato v. Mercury Cas. Co.,*
53 Cal. App. 4th 825 (1997)..................................................................................17

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) .........................................................................................11, 12

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007) ...............................................................................................11

*Centex Homes v. R-Help Constr. Co., Inc.,*
32 Cal. App. 5th 1230 (2019).........................................................................13, 14

*Certain Underwriters at Lloyd's of London v. Superior Court*
(*Powerine Oil Company, Inc.*)
24 Cal.4th 945 (2001)............................................................................................14

*Gasnik v. State Farm Ins. Co.,*
825 F. Supp. 245 (1992).........................................................................................21

*Golden Eagle Ins. Corp. v. Cen-Fed, Ltd.,*
148 Cal. App. 4th 976 (2007).....................................................................15, 16, 17

*Guz v. Bechtel Nat'l, Inc.,*
24 Cal. 4th 317, 100 Cal. Rptr. 2d 352, 8 P.3d 1089 (2000)................................21

*Knievel v. ESPN,*
393 F.3d 1068 (9th Cir. 2005).................................................................................12

*Lazy Y Ranch LTD v. Behrens,*
546 F.3d 580 (9th Cir. 2008)..................................................................................12

*McKenna v. Permanente Med. Group., Inc.,*
894 F. Supp. 2d (E.D. Cal. 2012)...........................................................................12

DEFENDANT AMERICAN FIRE
AND CASUALTY COMPANY'S
MOTION TO DISMISS

*Mendiondo v. Centinela Hosp. Med. Ctr.*,
521 F.3d 1097 (9th Cir. 2008)..................................................................................11

*Mirpad, LLC v. Cal. Ins. Guarantee Ass'n*,
132 Cal. App. 4th 1058 (2005)........................................................................... 16, 17

*Moss v. U. S. Secret Serv.*,
572 F.3d 962 (9th Cir. 2009)...................................................................................11

*Navarro v. Block*,
250 F.3d 729 (9th Cir. 2001) ....................................................................................11

*O'Keefe v. Allstate Indem. Co.*,
953 F. Supp. 2d 1111 (S.D. Cal. 2013) .................................................... 20, 21, 22

*R & B Auto Ctr., Inc. v. Farmers Grp., Inc.*,
140 Cal. App. 4th 327 (2006)............................................................... 18, 19, 22

*Scottsdale Ins. Co. v. MV Transportation*,
36 Cal.4th 643 (2005)...............................................................................................14

*Shwarz v. United States*,
234 F.3d 428 (9th Cir. 2000) ....................................................................................12

*Truck Ins. Exch. v. Unigard Ins. Co.*,
79 Cal. App. 4th 966 (2000)......................................................................................14

*United States ex rel. Lee v. Corinthian Colleges*,
655 F.3d 984 (9th Cir. 2011) ....................................................................................12

*United States v. Ritchie*,
342 F.3d 903 (9th Cir. 2003) ....................................................................................12

*Waller v. Truck Ins. Exch., Inc.*,
11 Cal. 4th 1 (1995)...................................................................................................17

**RULES**

Rule 12(b)(6)....................................................................................................... 11, 12

ROPERS
MAJESKI

A Professional Corporation
Menlo Park

4897-5315-0874.4

- 4 -

DEFENDANT AMERICAN FIRE
AND CASUALTY COMPANY'S
MOTION TO DISMISS

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Defendant American Fire and Casualty Company ("Defendant" or "American Fire") respectfully submits this motion to dismiss Plaintiff Carmel Valley Centre Drive, LLC's ("Plaintiff" or "CVCD") Complaint.  Dismissal is warranted because the Complaint fails to state any plausible claim for relief under well-established California law.  Despite CVCD's attempts to retroactively impose duties upon American Fire, the facts and controlling law make clear that American Fire did not—and could not—owe the obligations CVCD alleges.  This motion rests on three independent and dispositive grounds.

First, CVCD's claim for breach of the duty to defend fails as a matter of law because the underlying action against CVCD was fully adjudicated and concluded before CVCD allegedly became an insured under the subject reformed insurance policies.  California law is clear that American Fire could not have owed CVCD a duty to defend a lawsuit that no longer existed.  The entire Complaint is subject to dismissal on this basis alone.

Second, and equally dispositive, CVCD's breach of contract claim independently fails because no potential for coverage existed under the policies for the claims asserted against CVCD in the underlying lawsuit.  Again, the entire Complaint is subject to dismissal on this basis alone.

Third, CVCD's cause of action for breach of the implied covenant of good faith and fair dealing also fails because American Fire's denial of coverage was entirely reasonable based on the policies as written at the time of the tender, and as alleged in the Complaint (and attached thereto).  Thus, CVCD's bad faith claim is subject to dismissal on this additional basis.

For these reasons, and as explained further below, American Fire respectfully requests that the Court grant this motion and dismiss the Complaint in its entirety,

4897-5315-0874.4

- 5 -

DEFENDANT AMERICAN FIRE
AND CASUALTY COMPANY'S
MOTION TO DISMISS

without leave to amend.

## II.     <u>FACTUAL BACKGROUND</u>

### A.     <u>The Allegations in CVCD's Complaint Against American Fire</u>

This Motion addresses only the allegations that appear on the face of the Complaint.  American Fire wishes to emphasize that, by reciting the substance of the allegations of the Complaint herein, American Fire does not admit, in whole or any part, the truth of any of those allegations.

American Fire issued primary policy BKA (22) 56 18 56 66 (the "Primary Policy") to Asset Property Management Inc. dba Asset Property Group ("Asset Property Management"). (Complaint at ¶ 7.)  The Primary Policy was in effect from October 19, 2021 to October 19, 2022. *Id.*  CVCD was not named as an insured under the Primary Policy due to the error and/or inadvertence of CVCD's insurance broker (i.e., an entity unaffiliated with American Fire). *Id.*

American Fire issued umbrella policy number USA (22) 56 18 56 66 (the "Umbrella Policy") to Asset Property Management. (Complaint at ¶ 8.)  The Umbrella Policy was in effect from October 19, 2021 to October 19, 2022. *Id.*  CVCD was not named as an insured under the Umbrella Policy due to the error and/or inadvertence of CVCD's insurance broker. *Id.*  The terms of the Umbrella Policy are substantially same as those in the Primary Policy. *Id.*

On January 16, 2026, American Fire reformed the Primary Policy to name CVCD as a named insured, effective from the Primary Policy's inception date of October 19, 2021. (Complaint at ¶ 9.)  On or about February 5, 2026, American Fire reformed the Umbrella Policy to name CVCD as a named insured, effective from the Primary Policy's inception date of October 19, 2021. *Id.*

CVCD had no cognizable legal rights against American Fire until American Fire agreed to reform the Primary Policy and the Umbrella Policy (collectively, the "Policies") to name CVCD as an insured thereunder, and CVCD's causes of action as alleged in the Complaint did not accrue until the reformations took place.

ROPERS MAJESKI

A Professional Corporation
Menlo Park

(Complaint at ¶ 9.)

CVCD owns the real property located at 3501 Valley Centre Drive (the "CVCD Property"). (Complaint at ¶ 10.)

On or about August 8, 2022, Del Mar Hotel Partners, LP ("Del Mar") filed a lawsuit against, *inter alia*, CVCD, and, on or about October 21, 2022, Del Mar filed a First Amended Complaint ("FAC") solely against CVCD (the "Underlying Action"). (Complaint at ¶ 11.)  Del Mar asserted causes of action for Nuisance and Interference with Common Easement; Negligence; and Breach of CC&Rs. *Id.*  The Underlying Action went to trial in February 2025. *Id.* at ¶ 12.  By special verdict dated March 4, 2025, the jury awarded $373,440 in damages against CVCD. *Id.*  By Minute Order dated June 23, 2025, the Court awarded $960,740.90 in attorney's fees and $39,050.67 in costs against CVCD. *Id.*

CVCD tendered defense and indemnity of FAC in the Underlying Action to American Fire, which denied the claim on January 16, 2026. (Complaint at ¶ 13.)

To support its Breach of Contract claim, CVCD asserts that the damages sought in the Underlying Action gave rise to the potential and/or establish that CVCD could be and/or was liable for damages for "personal and advertising injury" as that term is defined in the Primary Policy and "personal injury" as that term is defined in the Umbrella Policy. (Complaint at ¶ 16.)  As such, CVCD asserts that American Fire was obligated to fully defend CVCD in the Underlying Action and to indemnify CVCD for all sums which it has become obligated to pay as damages. *Id.* at ¶ 15.  CVCD concludes that American Fire refused to defend and indemnify, and, therefore, has breached the Policies. *Id.* at ¶ 17.

To support its Bad Faith claim, CVCD asserts that American Fire breached its duty of good faith and fair dealing by unreasonably refusing to defend and/or indemnify CVCD and compelling CVCD to retain counsel and initiate litigation to recover amounts which are due and owing under the Policies. (Complaint at ¶ 21.)

On the above-discussed bases, the Complaint seeks (1) contractual benefits

due and owing under the Policies, (2) general and compensatory damages for failure to provide benefits due and owing under the Policies, (3) attorneys' fees and costs incurred to obtain insurance benefits, and (4) punitive and exemplary damages. (Complaint, Prayer for Relief.)

### B. The Policies

The Primary Policy, which CVCD attached and incorporated into its Complaint, provides the following insuring agreement under Coverage B.

**COVERAGE B - PERSONAL AND ADVERTISING INJURY LIABILITY**

**1. Insuring Agreement**

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result.

\* \* \*

b. This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

(Complaint, Exhibit 1 at Ex.1_56.)

The Primary Policy provides the following pertinent definitions.

**SECTION V - DEFINITIONS**

\* \* \*

**14.** "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:
a. False arrest, detention or imprisonment;
b. Malicious prosecution;
c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;
d. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;
e. Oral or written publication, in any manner, of material that violates a person's right of privacy:
f. The use of another's advertising idea in your "advertisement"; or

ROPERS
MAJESKI
A Professional Corporation
Menlo Park

**g.** Infringing upon another's copyright, trade dress or slogan in your "advertisement".

(Complaint, Exhibit 1 at Ex.1_66.)

The Umbrella Policy, which CVCD attached and incorporated into its Complaint, provides the following insuring agreement.

> We will pay on behalf of the "Insured" those sums in excess of the "Retained Limit" that the "Insured" becomes legally obligated to pay by reason of liability imposed by law or assumed by the "Insured" under an "insured contract" because of "bodily injury," "property damage," "personal injury," or "advertising injury" that takes place during the Policy Period and is caused by an "occurrence" happening anywhere.

(Complaint, Exhibit 2 at Ex.2_250.)

The Umbrella Policy provides the following pertinent definitions.

**V. DEFINITIONS**

* * *

**K.** "Personal injury" means injury other than "bodily injury" or "advertising injury" arising out of one or more of the following offenses during the policy period:
1. false arrest, detention or imprisonment;
2. malicious prosecution;
3. the wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies by or on behalf of its owner, landlord or lessor;
4. oral, written, televised, videotaped, or electronic publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;
5. oral, written, televised, videotaped, or electronic publication of material that violates a person's right of privacy; or
6. mental injury, mental anguish, humiliation, or shock, if directly resulting from Items **K.1.** through **5**.

(Complaint, Exhibit 2 at Ex.2_258.)

**C.    The Allegations against CVCD in the Underlying Action**

American Fire wishes to emphasize that, by reciting the substance of FAC in the Underlying Action herein, American Fire does not admit, in whole or any part, the truth of any of those allegations.

4897-5315-0874.4

- 9 -

DEFENDANT AMERICAN FIRE AND CASUALTY COMPANY'S MOTION TO DISMISS

ROPERS MAJESKI

A Professional Corporation
Menlo Park

Del Mar owns real property located at and commonly known as 3510 Valley Centre Drive, San Diego California, recorded as APN 307-240-02-00 (the "Del Mar Property"). (Request for Judicial Notice ["RJN"], Exhibit A, FAC at ¶ 6.)[1]  CVCD owns the adjacent CVCD Property. *Id.* at ¶ 7.

Del Mar and CVCD are neighbors, and competitors in the hotel development business.  Their respective properties are subject to certain Covenants, Conditions, and Restrictions (the "CC&Rs") relating to the Visitor, Center Owner's Association, Inc. (the "Owner's Association"). (RJN, Exhibit A, FAC at ¶ 8.)

A common easement (the "Common Easement") adjacent and appurtenant to the Del Mar Property and the CVCD Property is granted in the CC&Rs and benefiting all properties bound to the CC&Rs. (RJN, Exhibit A, FAC at ¶ 9.)

In or around August 2022, CVCD unlawfully and unreasonably interfered with Del Mar's use of the Common Easement by, among other things, erecting a metal fence and a concrete barricade across the Common Easement. (RJN, Exhibit A, FAC at ¶ 13.)  The chain link fence and concrete barricade prevented Del Mar's ingress and egress across the Common Easement and caused Del Mar significant delays in its construction of a hotel. *Id.*

CVCD knew that Del Mar was in the process of constructing a hotel at the Del Mar Property.  Further, CVCD is in the process of constructing its own hotel at the CVCD Property and, thus, sought to impede and frustrate Del Mar's project. (RJN, Exhibit A, FAC at ¶ 14.)

On the basis of these allegations, FAC asserted claims against CVCD for (1) Nuisance and Interference with Common Easement, (2) Negligence, and (3) Breach of CC&Rs. (RJN, Exhibit A, FAC at ¶¶ 15-27.)

---

[1] The Complaint purports to attach FAC in the Underlying Action as Exhibit 3.  "A true and correct copy of the First Amended Complaint filed in the Underlying Lawsuit is attached hereto as Ex. 3." (Complaint at 3:25-27.)  However, it appears that Plaintiff has inadvertently omitted Exhibit 3 from the Complaint.

4897-5315-0874.4

- 10 -

DEFENDANT AMERICAN FIRE AND CASUALTY COMPANY'S MOTION TO DISMISS

### D.     The Conclusion of the Underlying Action

The Underlying Action has concluded, as CVCD filed its Notice of Abandonment of Appeal on November 6, 2025. (RJN, Exhibit B.)  This filing formally terminated the appeal and resulted in the final disposition of the Underlying Action.

## III.   LEGAL ARGUMENT

### A.     Legal Standard

A Rule 12(b)(6) motion "tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  An order dismissing claims under FRCP 12(b)(6) is appropriate when they are not supported by "a cognizable legal theory" or "sufficient facts alleged under a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).  To survive a motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 677.  "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* at 678.

"A plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555-556.  Thus, "bare assertions . . . amounting to nothing more than a formulaic recitation of the elements . . . are not entitled to an assumption of truth." *Iqbal*, 556 U.S. at 680-81; *see Moss v. U. S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009).  Indeed, "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004);

ROPERS MAJESKI

A Professional Corporation
Menlo Park

DEFENDANT AMERICAN FIRE AND CASUALTY COMPANY'S MOTION TO DISMISS

*accord Iqbal*, 556 U.S. at 678.  Only pleaded facts, not conclusions, are presumed to be true for purposes of evaluating a motion to dismiss under Rule 12(b)(6). *United States ex rel. Lee v. Corinthian Colleges*, 655 F.3d 984, 991 (9th Cir. 2011).

### B.     Incorporation by Reference

In ruling on the Motion to Dismiss, the Court may consider the Complaint, documents the Complaint relies upon, documents referenced in the Complaint, and matters that may be judicially noticed, without converting the motion into one for summary judgment. *Corinthian Colleges*, 655 F.3d at 993; *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).  A court may consider evidence on which the Complaint relies if the Complaint refers to the document and the document is central to Plaintiff's claim. *McKenna v. Permanente Med. Group., Inc.,* 894 F. Supp. 2d, 1258, 1268 (E.D. Cal. 2012).

Consequently, the Court may ignore allegations that contradict documents referenced in the Complaint, which are determinative of Plaintiff's claims, or that are subject to judicial notice. *Lazy Y Ranch LTD v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008); *Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000).

In this case, the Court may consider the subject insurance policies, which are referenced and attached to the Complaint. (Complaint, Exhibits 1 and 2.)  The Court may also consider the relevant FAC in the Underlying Action, which is referenced and purported to be attached to the Complaint.  Despite CVCD's stated intention to attach FAC as Exhibit 3 to the Complaint, it appears that CVCD has inadvertently omitted this exhibit from the filing.  The Policies and FAC are clearly documents that the Complaint references and relies upon, and, therefore, may be considered under the "incorporation by reference" doctrine. *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005).

### C.     There Can Be No Duty to Defend an Action That Is No Longer Active

California law makes clear that an insurer's duty to defend is both tender-

4897-5315-0874.4

- 12 -

DEFENDANT AMERICAN FIRE AND CASUALTY COMPANY'S MOTION TO DISMISS

driven and time-bound: it arises when an insured tenders defense of a potentially covered claim, and it ends when the underlying action concludes. *Centex Homes v. R-Help Constr. Co., Inc.*, 32 Cal. App. 5th 1230, 1238 (2019).  The corollary is equally important here – if there is no duty to defend while the underlying case is pending, the insured cannot manufacture an *ex post facto* duty to defend a concluded lawsuit after the lawsuit has been finally adjudicated.  That is exactly what CVCD's Complaint attempts to do here.

The Complaint alleges that the Underlying Action went to trial in February 2025 and concluded with an Order awarding damages against CVCD in June 2025. (Complaint at ¶ 12.)  The Complaint admits that, when the Underlying Action was active and pending against CVCD, CVCD was not an insured and had no substantive rights under the Policies. *Id.* at ¶ 9.  CVCD contends that it first became an insured under the Primary Policy in January 2026, and first became and insured under the Umbrella Policy in February 2026, when American Fire agreed to reform the Policies, i.e., *after* the Underlying Action had already been tried, concluded, and finally adjudicated. *Id.*  Based on these allegations, there was no live, pending third-party action left to "defend" by the time CVCD claims it first obtained "cognizable legal rights" under the Policies.

In fact, the records properly before this Court confirm that CVCD's appeal in the Underlying Action had reached its conclusion, rendering the judgment against CVCD final, *before* CVCD alleges the Policies were reformed in 2026. Specifically, CVCD filed its Notice of Abandonment of Appeal in the Underlying Action on November 6, 2025, which resulted in final disposition of the Underlying Action long before CVCD sought a defense under the reformed Policies. (RJN, Exhibit B.)

The foregoing chronology forecloses any allegations, as a matter of law, that American Fire could have had a duty to defend the Underlying Action.  The duty to defend is not an abstract promise to reimburse litigation expenses whenever an

ROPERS
MAJESKI
A Professional Corporation
Menlo Park

insured later proves coverage; it is a present obligation to provide a defense while the third-party action is being litigated, and it lasts only until the case ends. *Centex Homes*, 32 Cal. App. 5th at 1238; *see also Aerojet-General Corp. v. Transp. Indem. Co.*, 17 Cal. 4th 38, 61, 70 (1997) (explaining that insurer's duty to defend has a temporal limit, i.e., between tender of the defense and conclusion of the action.)

Once the underlying lawsuit is concluded, the defense obligation – by its nature – can no longer be performed because there is no suit to defend.  In fact, California courts recognize it is simply too late to litigate the existence of a defense duty *after* the underlying case has been resolved. *See Centex Homes*, 32 Cal. App. 5th at 1238 (holding that "[i]n any event, it is too late to challenge the duty to defend after the underlying tort case has been resolved" because the Supreme Court of California in *Scottsdale Ins. Co. v. MV Transportation*, 36 Cal.4th 643, 655 (2005) has held that the defense duty lasts until the underlying lawsuit is concluded.)  In fact, outside of the temporal limit for the duty to defend, "it is difficult to understand what, if anything, [the insurer is] supposed to do." *Truck Ins. Exch. v. Unigard Ins. Co.*, 79 Cal. App. 4th 966, 979 (2000).

Thus, CVCD's express allegation that it had no cognizable legal rights against American Fire until American Fire agreed to reform the Policies in 2026 defeats any plausible duty-to-defend claim.  That allegation is incompatible with imposing a duty to defend a lawsuit that finally concluded in 2025.  If CVCD had no enforceable rights under the Policies until 2026, then American Fire could not have owed CVCD a contractual defense in 2022 – 2025, when FAC was litigated through trial, judgment, and appeal.

For these reasons, even accepting CVCD's allegations as true for pleading purposes, the Complaint does not and cannot establish that American Fire owed CVCD a duty to defend the Underlying Action.  The California Supreme Court has clearly mandated that, "where there is no duty to defend, there *cannot* be a duty to indemnify." *Certain Underwriters at Lloyd's of London v. Superior Court*

A Professional Corporation
Menlo Park

ROPERS
MAJESKI

(*Powerine Oil Company, Inc.*) 24 Cal.4th 945, 958 (2001) (emphasis in original).

The Court should grant this Motion, without leave to amend, and dismiss the Complaint on this basis alone.

### D. Alternatively, Coverage Would *Still* Be Unavailable Even If CVCD Could Establish it Was an Insured and Tendered Defense Prior to the Adjudication of the Underlying Action

California law would still mandate a finding of no coverage under the Policies even if CVCD could allege it was an insured and had cognizable legal rights under the Policies at the time when the Underlying Action was still active.

In its Complaint, CVCD theorizes that the Underlying Action was potentially covered by the Policies because Del Mar was seeking damages that could be characterized as damages for "personal and advertising injury," as that term is defined in the Primary Policy, and "personal injury," as that term is defined in the Umbrella Policy. The Policies, in pertinent part, define those terms to include "the wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor", for which coverage may be afforded under the definition of "personal and advertising injury" in the Primary Policy, and "personal injury" in the Umbrella Policy. (Complaint, Exhibit 1 at Ex.1_66; Exhibit 2 at Ex.2_258.) In other words, CVCD argues that Del Mar's allegations that CVCD blocked the Common Easement constituted "personal and advertising injury" under the Primary Policy, and "personal injury" under the Umbrella Policy, ostensibly pursuant to the Policies' "wrongful entry" provisions.

However, this argument clearly fails as a matter of California law, because Del Mar is a business organization, not a natural person, and the Policies' "wrongful entry" provisions expressly limit coverage to injuries sustained by natural persons, not organizations.

In *Golden Eagle Ins. Corp. v. Cen-Fed, Ltd.*, 148 Cal. App. 4th 976 (2007) ("*Cen-Fed*"), the Court of Appeal confronted precisely this issue when analyzing a

ROPERS MAJESKI

A Professional Corporation
Menlo Park

4897-5315-0874.4

- 15 -

policy with essentially identical language to the "wrongful entry" provisions at issue here. *Id.* at 990 n.11. In *Cen-Fed*, similar to the instant case, "personal injury" was defined as an injury that could arise out of one or more of the several designated offenses. *Id.* at 990. As in the instant case, certain of the designated offenses referred to "offenses affecting 'a person,' while others either refer to offenses affecting 'a person or organization' or do not designate either." *Id.* The Court of Appeal explained that the "pertinent offense for our purposes here is the wrongful eviction or entry into or invasion of the right of private occupancy of a room, dwelling or premises, which the policy specifically makes applicable only to *persons* occupying the premises, not to *persons and/or organizations*." *Id.* (emphasis in the original.) "Thus, by its very terms, that premises-based offense is not applicable to Cen-Fed's corporate lessee." *Id.* The Court in *Cen-Fed* cited to the decision in *Mirpad, LLC v. Cal. Ins. Guarantee Ass'n*, 132 Cal. App. 4th 1058, 1074 (2005), which similarly forecloses CVCD's coverage position. *Mirpad* involved an essentially identical "wrongful entry" provision to the ones present here. There, the Court of Appeal "held that when an insurance policy consistently distinguishes between persons (natural persons) and organizations, the distinct meanings have to be applied by the courts." *Cen-Fed*, 148 Cal. App. 4th at 990. Therefore, the Court in *Mirpad* held that "the wrongful eviction offense was directed at victims who were *natural persons*, not organizations." *Id.* (emphasis in the original.) For the same reason, the Court in *Cen-Fed* ruled that there was no coverage, as a matter of law.

Applying these controlling precedents to the present case, Del Mar—as a limited partnership and business organization—cannot possibly trigger the "wrongful entry" offense to establish coverage under the Policies. The provision's plain language limits coverage to injuries sustained by "a person," which California courts have definitively interpreted to mean natural persons only, not business entities. As Del Mar is the plaintiff in the Underlying Action and is a business

DEFENDANT AMERICAN FIRE AND CASUALTY COMPANY'S MOTION TO DISMISS

ROPERS MAJESKI

A Professional Corporation
Menlo Park

organization rather than a natural person, the "wrongful entry" provision simply does not apply.

As in *Cen-Fed* and *Mirpad*, this interpretation is further supported by the Policies' own structure, which consistently differentiates between coverage for "persons" and coverage for "organizations" throughout their terms. Where the Policies intend to cover organizations, the Policies expressly include them in the relevant provisions. The "wrongful entry" provision's limitation to "a person" must, therefore, be given its plain meaning as applying only to natural persons pursuant to the binding California authorities.

Here, CVCD's breach of contract and bad faith claims are entirely premised on its allegations that the Underlying Action sought damages giving rise to the potential for "personal and advertising injury" under the Primary Policy and "personal injury" under the Umbrella Policy. The foregoing authorities foreclose any such possibility as a matter of law. For this additional reason, the Court should grant this Motion, without leave to amend.

**E.**   **The Claim for the Implied Covenant of Good Faith and Fair Dealing Must Fail Because CVCD Cannot Allege That American Fire's Denial of Coverage Was Unreasonable**

An insurer's breach of its duty to defend violates the covenant of good faith and fair dealing *only* where such breach was unreasonable. *Amato v. Mercury Cas. Co.*, 53 Cal. App. 4th 825, 831 (1997). Preliminarily, as discussed above, American Fire owed no duty to defend CVCD in the Underlying Action, and the bad faith claim must fail for this reason alone. *See Waller v. Truck Ins. Exch., Inc.*, 11 Cal. 4th 1, 36 (1995) (holding that where there is no duty to defend, there can be no action for breach of the implied covenant of good faith and fair dealing.)

That much is obvious and ends the required analysis. However, even if CVCD could somehow allege the potential for coverage, and it cannot, the claim for beach of the implied covenant must independently fail because CVCD cannot establish that any alleged breach was unreasonable.

ROPERS
MAJESKI
A Professional Corporation
Menlo Park

4897-5315-0874.4

- 17 -

DEFENDANT AMERICAN FIRE
AND CASUALTY COMPANY'S
MOTION TO DISMISS

CVCD admits that it was not an insured and had no substantive rights under the Policies until American Fire agreed to reform the Policies in 2026. (Complaint at ¶ 9.)  CVCD also admits that, by the time it became an insured under the Policies in 2026, there was no suit to defend. *Id.* at ¶ 12.  Given this fundamental problem, CVCD endeavors to circumvent the impact of these admissions through what can only be characterized as a *retroactive* bad faith theory of liability.  Specifically, CVCD alleges that its lack of coverage during the pendency of the Underlying Action (due to an error of its own insurance broker), coupled with American Fire's subsequent reformation of the Policies effective from the inception date of October 19, 2021, can somehow create retroactive bad faith liability for American Fire's alleged breach of the reformed Policies.  In essence, CVCD is attempting to subject American Fire to retroactive bad faith liability for not defending CVCD when it admittedly was not an insured and had no rights under the Policies.  This retroactive bad faith theory defies logic, and California courts have repeatedly rejected it.

In *R & B Auto Ctr., Inc. v. Farmers Grp., Inc.*, 140 Cal. App. 4th 327 (2006), a *used* car dealership purchased a lemon law insurance policy. *Id.* at 332.  When sued under the lemon law, the dealership discovered its coverage only applied to the sale of *new* vehicles. *Id.*  The insurer refused to either defend or indemnify the dealership in connection with the lemon law suit. *Id.*  The dealership brought an action against the insurer, asserting, among other claims, reformation and breach of the implied covenant of good faith and fair dealing. *Id.*  The trial court dismissed the bad faith claim and the dealership appealed.

The Court of Appeal affirmed the dismissal of the bad faith claim because, despite the dealership's claim for reformation, at the time of the insurer's denial of duty to defend, the subject policy clearly provided no lemon law coverage for used car sales. *Id.* at 353.  Therefore, the insurer "cannot be held to have breached the implied covenant of good faith and fair dealing with respect to the insurance contract *as written*, because there was no potential for coverage thereunder." *Id.*

DEFENDANT AMERICAN FIRE AND CASUALTY COMPANY'S MOTION TO DISMISS

(emphasis added.)

The dealership attempted to "piggyback a bad faith cause of action on top of its reformation cause of action." *Id.* Specifically, the dealership argued that "an insurance contract can be reformed to provide not only retroactive insurance coverage, but also a retroactive basis for a bad faith claim." *Id.* Similar to this case, the insured dealership argued that "even though there was no potential for coverage at the time [the insurer] processed the lemon law claim, [the insurer] nonetheless should be held liable for bad faith if in the future the insurance contract is reformed to provide lemon law coverage for used car sales." *Id.* at 353-54. The Court rejected this logic. "[B]efore an insurer can be found to have acted tortiously (i.e., in bad faith), for its delay or denial in the payment of policy benefits, it must be shown that the insurer acted *unreasonably* or *without proper cause*." *Id.* at 354 quoting *Chateau Chamberay Homeowners Ass'n v. Associated Internat. Ins. Co.*, 90 Cal. App. 4th 335, 347 (2001). Generally, "the reasonableness of the insurer's decisions and actions must be evaluated as of the time that they were made." *Id.* at 354 quoting *Chateau Chamberay Homeowners Ass'n*, 90 Cal. App. 4th at 347. "When an insured submits a claim to an insurer and there is no potential for coverage of that claim under the policy, the insurer has no duty to defend and it may reasonably deny the claim." *R & B Auto Ctr., Inc.*, 140 Cal. App. 4th at 354. Importantly, and pertinent to this case, "[s]ince it is reasonable to deny the claim at the time, if the policy is later reformed to provide retroactive coverage, the insurer may not be held liable for bad faith for failing to have the foresight to know that the policy would be reformed." *Id.*

Further, the Court specifically rejected the retroactive theory of bad faith by providing that even if the trial court, on remand, elected to reform the policy to provide lemon law coverage for used car sales, this would not mean that an insurer can be held liable for bad faith retroactively, after its reasonable denial of coverage on the basis of the then exiting policy. *Id.* at 354.

A different decision applying California law came to the same conclusion. In *O'Keefe v. Allstate Indem. Co.*, 953 F. Supp. 2d 1111 (S.D. Cal. 2013), Christopher and Joni O'Keefe purchased auto insurance for their new car. *Id.* at 1113. In this process, Christopher and Joni met with insurer's agent Mallory Lee to discuss Christopher's suspended driver's license, and his plans to complete any DMV-required assessments to lift the suspension. *Id.* Once lifted, Christopher and Joni wanted Christopher to be the primary driver of the new vehicle. *Id.* Ms. Lee told Christopher and Joni that the insurance policy would list Christopher as an "excluded" driver, but that Ms. Lee could add Christopher as the primary driver as soon as the license was reinstated. *Id.*

Thereafter, Christopher called the insurer to inform them that he reinstated his license and that he wanted the insurer to adjust his status from "excluded" to "primary driver." *Id.* at 1113. Christopher was unable to speak to Ms. Lee, but instead spoke to another agent, Matthew Bevan. *Id.* Following the conversation with Mr. Bevan, Christopher understood that he was no longer an "excluded" driver, and that Mr. Bevan listed him as "primary driver." *Id.*

Thereafter, Christopher was involved in a car accident and called Ms. Lee to report the loss. *Id.* at 1113. Ms. Lee requested a DMV license history report verifying the reinstated status of Christopher's license. *Id.* Christopher obtained the report the next day, which confirmed that his driver's license was active and not suspended as of the date of the accident. *Id.* Ms. Lee agreed to provide the report to the underwriting department and to ask the department to apply the information to the policy effective before the accident date.

Following the investigation, the insurer denied the insurance claim, "noting that coverage was unavailable because Christopher was an excluded driver at the time of the accident." *Id.* at 1113. Christopher and Joni brought a lawsuit and asserted a claim for breach of the implied covenant of good faith and fair dealing against the insurer. *Id.* at 1114.

DEFENDANT AMERICAN FIRE
AND CASUALTY COMPANY'S
MOTION TO DISMISS

The insurer filed a motion to dismiss the claim for breach of the implied covenant of good faith and fair dealing, arguing that the claim "applies only when the insurer withholds benefits due under the written terms of the policy." *Id.* at 1114.  The insurer argued that "[b]ecause the insurance policy listed Christopher as an excluded driver at the time of the accident, [the] denial complies with the policy terms as written," and the bad faith claim cannot lie even if reformation of the policy were later to be ordered. *Id.*

The Court first recognized that "[b]enefits are due under an insurance policy when so defined under the express terms of the contract as written." *Id.* at 1115 citing to *Gasnik v. State Farm Ins. Co.*, 825 F. Supp. 245, 251 (1992).  Further, the Court also noted that "[t]he implied covenant only supplements the policy's express provisions, *Love*, 221 Cal. App. 3d at 1153, and cannot 'impose substantive duties or limits on the contractual parties beyond those incorporated in the specific terms of their agreement.'" *Guz v. Bechtel Nat'l, Inc.*, 24 Cal. 4th 317, 350, 100 Cal. Rptr. 2d 352, 8 P.3d 1089 (2000)." *O'Keefe*, 953 F. Supp. 2d at 1115.

The Court further explained that, at the time of the accident, Christopher was an "excluded" driver under the policy "as written," "and because the O'Keefes cannot establish that coverage existed under the express terms of the contract, there is no cause of action for breach of the implied covenant of good faith and fair dealing." *Id.* at 1116.  Moreover, even if the insurer's agents "represented that coverage extended to Christopher or promised to modify the terms of the contract to provide such coverage, the implied covenant would still be limited to assuring compliance with the express terms of the agreement, and '[could not] be extended to create obligations not contemplated in the contract.'" *Id.* quoting *Racine & Laramie, Ltd. v. Dep't of Parks & Recreation*, 11 Cal. App. 4th 1026, 1032 (1992). The Court concluded that, as a matter of law, the insurer was not liable for bad faith when for denying a claim where, at the time of the loss, the *written* terms of the policy did not afford coverage. *O'Keefe*, 953 F. Supp. 2d at 1116.

4897-5315-0874.4

- 21 -

DEFENDANT AMERICAN FIRE AND CASUALTY COMPANY'S MOTION TO DISMISS

The decisions in *R & B Auto* and *O'Keefe* are dispositive of CVCD's unavailing bad faith claim. Pursuant to these decisions, American Fire's denial of coverage was reasonable at the time made because CVCD admits that it was not an insured under the express terms of the Policies as written. "Since it is reasonable to deny the claim at the time, if the policy is later reformed to provide retroactive coverage, the insurer may not be held liable for bad faith for failing to have the foresight to know that the policy would be reformed." *R & B Auto Ctr., Inc.*, 140 Cal. App. 4th at 354. A reformation subsequent to a reasonable denial of coverage under the policy terms in exitance at the time of the denial cannot create a retroactive liability for bad faith. *Id.* For these reasons, among all others, CVCD's claim for the implied covenant of good faith and fair dealing must necessarily fail.

## IV.    CONCLUSION

Based on the foregoing, American Fire respectfully requests that this Court grant this Motion, without leave to amend.

Dated: April 3, 2026                                    ROPERS MAJESKI PC


By: */s/ Hayk Ghalumyan*
    BLAKE J. RUSSUM
    HAYK GHALUMYAN
    Attorneys for Defendant
    American Fire and Casualty
    Company

4897-5315-0874.4

- 22 -

ROPERS MAJESKI
A Professional Corporation
Menlo Park